UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

In re: PATRICIA A. GALLEGOS            Case No. 13-13689

    Debtor.

---

NEW MEXICO DEPARTMENT
OF WORKFORCE SOLUTIONS

    Plaintiff,

v.                                     Adv. No. 14-1017

PATRICIA A. GALLEGOS

    Defendant.

## MEMORANDUM OPINION

Before the Court is Plaintiff's adversary complaint against Debtor-Defendant. Plaintiff New Mexico Department of Workforce Solutions (the "Department") claims Defendant Patricia Gallegos fraudulently collected $3,375 in unemployment benefits while she was working part time. The Department seeks a determination that Ms. Gallegos' debt arising from such payments is nondischargeable under 11 U.S.C. § 523(a)(2)(A). After considering the evidence and arguments presented at trial, the Court determines the debt to be nondischargeable under § 523(a)(2)(A).

### FINDINGS OF FACT

The Department administers the unemployment insurance program for the State of New Mexico. It provides unemployment benefits to workers who meet certain eligibility requirements. When a claimant applies for unemployment benefits, the claimant is directed to review the unemployment application (the "Application") and the Unemployment Insurance Information Handbook (the "Handbook"), which contain policies and information about the

unemployment insurance process. The policies are aimed at helping claimants apply for and collect benefits to which they are entitled and ensuring claimants are not overpaid. The Application states that to be eligible for benefits, claimants must report their total gross wages for any work performed. *See* Exhibit 7. The Handbook also informs claimants of their obligation to report any earnings. It states:

> You are required to report any gross wages, cash, or anything of value that you earn in the week you are claiming benefits. Failure to report these earnings could result in an [o]verpayment or denial of [u]nemployment benefits.

*See* Exhibit 17, p. 5.

Under certain circumstances, claimants can receive benefits while working part-time. The section of the Handbook titled "Can I Work and Receive Benefits?" provides: "Yes, depending on how many hours you work and how much you earn…. You can earn up to 20% of your weekly benefit amount without reducing your benefit amount, but you must report all gross wages earned." Exhibit 17, p. 17. If someone works part-time and truthfully reports their wages, the full weekly benefit is not reduced by the part-time earnings up to 20% of the full benefit amount but is reduced dollar for dollar for earnings above that amount. In other words, the Department reduces the full weekly benefit amount by the difference between: (a) the amount earned for the week from part-time work; and (b) 20% of the full weekly benefit amount. Translating this into symbols:

$B$ = the full weekly benefit
$E$ = amount earned for the week
$.2B$ = 20% of the full weekly benefit amount
The weekly benefit for someone working part-time is: $B - (E - .2B)$

For example, if the full weekly benefit amount (B) is $200 and the amount earned from the part-time work for a week (E) is $60, the benefit for the week would be $200 – ($60 – $40) = $180.

However, the Handbook provides that once the claimant earns wages equal to or in excess of their weekly benefit amount, the claimant will receive no benefits. *See* Exhibit 17, p. 17.

Ms. Gallegos applied for unemployment benefits on June 10, 2012 and began receiving payments about two weeks later. She collected benefits for the weeks ending June 23, 2012 through September 1, 2012. Except for the last two weeks of that period, Mr. Gallegos represented to the Department through weekly online or telephone certifications that she was unemployed. The certifications, which had to be completed before Ms. Gallegos could receive benefits, posed the following question: "Did you work for cash, wages, or anything of value during this week?" Ms. Gallegos answered "no" each time. When she completed the certifications through the Department's automated telephone system, Ms. Gallegos was required to repeat the word "no" and then confirm her answer. Ms. Gallegos also spoke directly with an employee of the Department on July 31, 2012 and represented that she was not employed.

In reality, Mr. Gallegos was working 14 to 15 hours per week for the Environmental Control Department of Bernalillo County ("Environmental Control") while she collected benefits. She attended an orientation on June 7, 2012 - which was three days before she filed her application with the Department - and worked there through at least September 1, 2012. Ms. Gallegos cleaned offices at a rate of $7.65 per hour. She earned between about $100 and $114 per week. Ms. Gallegos previously provided administrative services in a consulting firm but took the cleaning job at Environmental Control to support her daughter. Ms. Gallegos knew she was required to report her Environmental Control wages to the Department but intentionally misrepresented her employment status in order to collect more unemployment benefits. She did so because she believed her unemployment benefits were insufficient to cover her living

3

expenses. It was also virtually impossible for Ms. Gallegos to contact the Department because claimants are placed on hold for hours before being connected to a Department representative.

The Department discovered Ms. Gallegos was working part-time at Environmental Control during a routine audit. Shortly thereafter, the Department contacted her regarding its finding. Ms. Gallegos admitted to working at Environmental Control part-time but denied any wrongdoing. *Id*. She then reported about $114 in weekly earnings from Environmental Control when she certified for unemployment benefits for the weeks ending August 25, 2012 and September 1, 2012.

On or about September 15, 2012, the Department determined Ms. Gallegos was overpaid unemployment benefits as result of false representations regarding her part-time earnings. *See* Exhibit 11, p. 14. Pursuant to a forfeiture provision of the New Mexico Unemployment Compensation Act, the Department sought repayment of the entire amount of benefits she collected, including the amounts she would have received had she been truthful. Ms. Gallegos appealed the determination through the Department's appellate tribunal, and the determination was affirmed.

Ms. Gallegos collected a total of $3,375 in unemployment benefits for the week ending June 23, 2012 through the week ending August 18, 2012.[1] Had she truthfully reported her part-time wages to the Department, she would have been entitled to collect a total of $2,998.11, broken down as follows:

---

[1] Ms. Gallegos actually collected benefits for two additional weeks (August 25, 2012 and September 1, 2012). However, the parties agreed at trial that Ms. Gallegos received total benefits in the amount of $3,375. Such amount does not include what the Department paid Ms. Gallegos during those later weeks. The Court therefore did not consider the benefits Ms. Gallegos received for the week ending August 25, 2012 or the week ending September 1, 2012.

4

| Week Ending | Entitlement Without Part-Time Wages | Part-Time Wages | Entitlement With Part-Time Wages[2] | Dependent Allowance | Total Benefits With Truthful Reporting |
|---|---|---|---|---|---|
| June 16, 2012 | $0 | $142.29 | $0 | $0 | None[3] |
| June 23, 2012 | $350 | $115.74 | $304.26 | $25 | $329.26 |
| June 30, 2012 | $350 | $120.64 | $299.36 | $25 | $324.36 |
| July 7, 2012 | $350 | $94.02 | $325.98 | $25 | $350.98 |
| July 14, 2012 | $350 | $114.29 | $305.71 | $25 | $330.71 |
| July 21, 2012 | $350 | $115.13 | $304.87 | $25 | $329.87 |
| July 28, 2012 | $350 | $112.30 | $307.70 | $25 | $332.70 |
| August 4, 2012 | $350 | $106.64 | $313.36 | $25 | $338.36 |
| August 11, 2012 | $350 | $107.87 | $312.13 | $25 | $337.13 |
| August 18, 2012 | $350 | $120.26 | $299.74 | $25 | $324.74 |
| **Total benefits received** | | | | | **$3,375** |
| **Total benefits Ms. Gallegos would have received had she reported truthfully:** | | | | | **$2,998.11** |
| **Overpayment resulting from failure to report part-time wages:** | | | | | **$376.89** |

As the table demonstrates, Ms. Gallegos would have collected about 88% of the total benefits paid by the Department had she reported her part-time wages. Ms. Gallegos is willing to repay the $376.89 overpayment but does not believe she should forfeit all of her benefits. Ms. Gallegos has not made any payments to the Department.

---

[2] "Entitlement With Part-Time Wages" represents the amount of unemployment benefits Ms. Gallegos would have been entitled to had she truthfully reported her part-time wages to the Department. The Court calculated this amount by using the formula described on page 2.

[3] The Department requires claimants to complete a one-week waiting period before collecting benefits. Ms. Gallegos did not collect benefits until the week ending June 23, 2012.

5

## DISCUSSION

The Department asserts that all of the unemployment benefits paid to Ms. Gallegos, including the benefits she would have received had she been truthful, are nondischargeable under § 523(a)(2)(A). Section 523(a)(2)(A) excepts from discharge debts for "money, property, services, or an extension, or renewal of credit, to the extent obtained by false pretenses, a false representation, or actual fraud." A creditor seeking to except its debt from discharge under § 523(a)(2)(A) based on a false representation must prove, by a preponderance of the evidence:

> The debtor made a false representation;
> [T]he debtor made the representation with the intent to deceive the creditor;
> [T]he creditor relied on the representation;
> [T]he creditor's reliance was [justifiable]; and
> [T]he debtor's representation caused the creditor to sustain a loss.

*Johnson v. Riebesell (In re Riebesell)*, 586 F.3d 782, 789 (10th Cir.2009) (quoting *Fowler Bros. v. Young (In re Young)*, 91 F.3d 1367, 1373 (10th Cir.1996). *See also Field v. Mans*, 516 U.S. 59, 60 (1995) (changing the standard of reliance under 11 U.S.C. § 523(a)(2)(A) from "reasonable" to "justifiable").

Fraudulent intent "need not be shown by direct evidence, but may be inferred from the totality of the circumstances." *In re Carlson,* 2008 WL 8677441, *2 (10th Cir. 2008) (quoting *In re Davis*, 246 B.R. 646, 652 (10th Cir. BAP 2000)). *See also Young,* 91 F.3d at 1375 ("The second element of § 523(a)(2)(A), the debtor's intent to deceive the creditor in making false representations to the creditor, may be inferred from the totality of the circumstances.") (internal quotations omitted).

In this case, the potentially nondischargeable debts fall into two categories: (1) the $376.89 overpayment resulting from Ms. Gallegos' failure to report her part-time wages (the "Overpayment"); and (2) the $2,998.11 forfeiture the Department seeks to recover as a result of

the Overpayment (the "Forfeiture"), which represents the remaining amount of benefits she received. The Court will address each category below.

## I. Dischargeability of the Overpayment

As the Court explained in *In re Bell,* 2014 WL 6819714 (Bankr. D.N.M. 2014), making false statements to obtain unemployment benefits generally renders the resulting overpayment nondischargeable under § 523(a)(2)(A). *See also In re Searle,* 2014 WL 1407308, *5-6 (Bankr. D.N.H. 2014) (finding that the unemployment benefits paid to the debtor while she was employed were nondischargeable where she completed an online certification each week stating that she did not receive any wages or other compensation); *In re Sanderson,* 509 B.R. 206, 210-211 (Bankr. W.D.Wis. 2014) (finding that "the debt owed to the Department representing the actual amount of the overpaid unemployment benefits and accrued interest should be excepted from discharge under section 523(a)(2)(A)" where the debtor continued to accept unemployment benefits after he lost eligibility); *In re Platt,* 2014 WL 457739 (Bankr. D.Neb. 2014) (concluding that the overpayment of unemployment benefits should be excepted from discharge pursuant to 11 U.S.C. § 523(a)(2)(A)).

Here, Ms. Gallegos made false representations to the Department by certifying that she was unemployed when, in fact, she was working part time at Environmental Control. The Department's requirement that she answer "yes" or "no" in response to the question "did you work for cash, wages, or anything of value during this week?" demonstrates that she understood the reporting requirement. Further, Ms. Gallegos lied to an employee of the Department regarding her employment status during a telephone call on July 31, 2012. The Court finds Ms. Gallegos intended to deceive the Department by making the false certifications and otherwise purporting to be unemployed.

7

The remaining elements of § 523(a)(2)(A) are also met with respect to the Overpayment. The fact that the Department continued to pay unemployment benefits demonstrates it actually relied on Ms. Gallegos' misrepresentations. Such reliance was justifiable because the Department had no reason to know she was misrepresenting her employment status until it conducted a routine audit several months later and discovered the discrepancies. The Department acted promptly to investigate the matter after it learned of the discrepancy. Finally, Ms. Gallegos' misrepresentations caused the Department to pay additional benefits.

The $376.89 Overpayment is therefore nondischargeable under § 523(a)(2)(A).

## II. Dischargeability of the Forfeiture

Beyond the relatively small Overpayment, the main point of contention in this case is whether the $2,998.11 Forfeiture is dischargeable. The Department seeks to recover the entire amount of benefits Ms. Gallegos collected - including the benefits she would have received had she been truthful - based on a forfeiture provision of the New Mexico Unemployment Compensation Act. Ms. Gallegos asserts that, even if the Court finds fraud, the Department was only damaged to the extent of the Overpayment.

The New Mexico Unemployment Compensation Act requires individuals to forfeit their entire benefit claim if they knowingly increase the amount of their benefits through a false representation. *See* N.M.S.A. 1978 § 51-1-38(F). That section provides:

> F. Notwithstanding any other provision of the Unemployment Compensation Law, if any individual claiming benefits or waiting period credits, in connection with such claim, makes any false statement or representation, in writing or otherwise, knowing it to be false or knowingly fails to disclose any material fact in order to obtain or increase the amount of a benefit payment, such claim shall not constitute a valid claim for benefits in any amount or for waiting period credits but shall be void and of no effect for all purposes. The entire amount of the benefits obtained by means of such claim shall be, in addition to any other penalties provided herein, subject to recoupment by deduction from

8

the claimant's future benefits or they may be recovered as provided for the collection of past due contributions in Subsection B of Section 51-1-36 NMSA 1978.[4]

*Id.*

The statute appears unduly punitive as applied to this case. The Forfeiture is about eight times the amount of the Overpayment. Nevertheless, the statute governs the Department's augmented damages claim stemming from the Overpayment.

The Department relies on *Cohen v. de la Cruz*, 523 U.S. 213 (1998) as support for its assertion that the Forfeiture is nondischargeable. In *Cohen*, a group of tenants sued the debtor-landlord under § 523(a)(2)(A) after he charged excess rents in violation of a local rent control ordinance and the New Jersey consumer fraud act. The landlord argued that the tenants' recovery was limited to the value of the property obtained by fraud and should not include any ancillary damages. *Id.* at 219. The Supreme Court rejected the argument. It pointed out that the tenants' claim for treble damages - which was part of their statutory remedy under the consumer fraud act - was an enforceable obligation stemming from the fraud. *Id.* at 218-219. Without declaring such obligations nondischargeable, the Court reasoned, creditors could be prevented from recovering all losses occasioned by the fraud. *Id.* at 222. The Supreme Court therefore held that for purposes of § 523(a)(2)(A), a debt obtained by fraud "encompasses any liability arising from money, property, etc., that is fraudulently obtained, including treble damages, attorney's fees, and other relief that may exceed the value obtained by the debtor." *Id.* at 223.

*Cohen* has been applied to prevent debtors from discharging various ancillary obligations such as punitive damages, interest, and costs. *See In re Barber,* 326 B.R. 463, 467 (10th Cir. BAP 2005) (punitive damages are nondischargeable under § 523(a)(2)(A), to the extent they arise from the fraud); *In re Cupit,* 514 B.R. 42, 57-58 (Bankr. D.Colo. 2014) (interest constitutes

---

[4] NMSA 1978 § 51-1-36(B) describes how the Department may collect past-due contributions and overpayments, which includes levying on the claimant's property.

9

part of the nondischargeable debt under *Cohen*); *In re Goguen,* 691 F.3d 62, 67 (1st Cir. 2012) (costs are nondischargeable under *Cohen*). The Department has not cited, and the Court has not found, any cases addressing whether *Cohen* applies to forfeiture obligations. Such obligations are typically analyzed under § 523(a)(7), which bars the discharge of certain fines, penalties, and forfeitures payable to a governmental unit. *See, e.g., In re Sanderson,* 509 B.R. 206, 210-211 (Bankr. W.D.Wis. 2014) (analyzing the overpayment of unemployment benefits under § 523(a)(2)(A) and the fraud penalty under § 523(a)(7)).[5] The Department's failure to plead § 523(a)(7) is not fatal, however, because debts can be nondischargeable under more than one subsection of § 523(a). *In re Hamada,* 291 F.3d 645, 657 (9th Cir. 2002) (reviewing the bankruptcy court's determination that a "judgment [was] non-dischargeable under various subsections of 11 U.S.C. § 523(a)").[6]

After carefully reviewing the Supreme Court's analysis in *Cohen,* this Court agrees it is controlling and cannot be meaningfully distinguished from this case. Like treble damages, the Forfeiture is part of the Department's statutory remedy under the New Mexico Unemployment Compensation Act. It is an enforceable obligation of Ms. Gallegos, and it arises under the statute as a direct result of the Overpayment. If Ms. Gallegos had not made false representations

---

[5] *See also In re Adamic,* 291 B.R. 175, 180 (Bankr. D.Colo. 2003) ("[D]ebts for overpayment of unemployment compensation benefits … may be excepted from a Chapter 7 discharge under 11 U.S.C. § 523(a)(2)(A), and monetary penalties may be excepted under 11 U.S.C. § 523(a)(7)."); *In re Hatcher*, 111 B.R. 696, 700-701 (Bankr. N.D.Ill. 1990) (noting that an overpayment of unemployment benefits is nondischargeable under § 523(a)(2)(A), while the penalty is nondischargeable under § 523(a)(7)); *In re O'Brien,* 110 B.R. 27 (Bankr. D.Colo. 1990) (same). *Cf. Re Hurtado*, 2014 WL 5431321 (Bankr. D.N.J. 2014) (analyzing whether a penalty based on the debtor's failure to maintain workers' compensation insurance is nondischargeable under § 523(a)(7)).

[6] *See also In re Meyer,* 197 B.R. 277, 279 (N.D.Ill. 1996) (affirming bankruptcy court's determination that a debt was "non-dischargeable pursuant to various subsections of 11 U.S.C. § 523"); *In re Teeslink,* 165 B.R. 708, 713 n. 9 (Bankr. S.D.Ga. 1994) (observing that "[s]ome of the claims asserted fall within more than one of the § 523 exceptions to discharge").

regarding her employment status, she would not be required to forfeit all of her benefits. The Forfeiture is therefore nondischargeable under § 523(a)(2)(A).

The Court's holding in this case is not without limits. The New Mexico Unemployment Compensation Act imposes a potentially severe forfeiture penalty on claimants which is not designed to be proportionate to the amount of overpaid benefits. In some instances the forfeiture amount may be so disproportionate to the overpayment amount that the New Mexico Unemployment Compensation Act, as applied, violates substantive due process. *See Aken v. Plains Elec. Generation & Transmission Co-op., Inc.,* 132 N.M. 401, 49 P.3d 662 (2002) (discussing the circumstances under which punitive damages awards violate substantive due process). If, for example, the Department had sought to recover a $2,998.11 forfeiture because a claimant received a $100 fraud overpayment, the result very well may have been different.

## CONCLUSION

Based on the foregoing, the Court concludes: (1) Ms. Gallegos fraudulently obtained the $376.89 Overpayment; and (2) the 2,998.11 Forfeiture constitutes a liability arising from the fraud. Ms. Gallegos' debt to the Department, which consists of the entire amount of unemployment benefits she received, is therefore nondischargeable under § 523(a)(2)(A). The Court will enter a separate judgment consistent with this memorandum opinion.

_____
ROBERT H. JACOBVITZ
United States Bankruptcy Judge

Entered on: May 4, 2015
COPY TO:

| | |
|---|---|
| Elizabeth A. Garcia | Patricia A. Gallegos |
| P.O. Box 1928 Legal Section | 807 Cerro De Ortega Dr SE |
| Albuquerque, NM 87103 | Rio Rancho, NM 87124 |